1

**LAW OFFICES OF GABRIEL DEL VIRGINIA**
*Proposed Attorneys for the Debtor*
*and Debtor in Possession.*
30 Wall Street, 12th Floor,
New York, New York 10005.
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re

GULLIVER'S GATE, LLC,

                                  Debtor.
-------------------------------------------------------x

                                Chapter 11
                                Case No. 19-13392-mkv

**DEBTOR'S ANSWER AND INCORPORATED LEGAL POINTS IN OPPOSITION TO THE APPLICATION OF TIMES SQUARE ASSOCIATES LLC ("LANDLORD") <u>VACATING AND LIFTING THE AUTOMATIC STAY</u>**

TO:    HONORABLE MARY KAY VYSKOCIL
         UNITED STATES BANKRUPTCY JUDGE:

        GULLIVER'S GATE, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), submits this answer and opposition (the "Opposition") to the application ("Application") of Times Square Associates LLC ("TSA," "Movant," or "Landlord") for an order vacating and lifting the automatic stay (the "Stay") of section 362 of title 11 through its proposed counsel, the Law Offices of Gabriel Del Virginia, and respectfully represents and says:

# INTRODUCTION.[1]

1. The instant filling was necessary to protect the interests of the Debtor's business. If the relief sought by the Movant is granted, the Debtor would be unable to reorganize.

2. The Movant is aware, or should be aware, hat it would take at least 60 days for the Debtor to move all the exhibits. The Debtor owns and manages Gulliver's Gate, an exhibit space/attraction in the heart of Time Square. Gulliver's Gate is a technologically advanced, interactive and immersive world of miniatures covering 50,000 square feet. Gulliver's Gate is the largest of its kind ever created. It was crafted by model makers and artisans in multiple locations around world. It took over 400,000 Man Hours to build, has 30,000 ft of Train Track, 400,000 Lights, 5000 Buildings and Bridges, 250,000 Individual Figures and over 100,000 Trees. If the Debtor is forced to move all of these parts without adequate time it may well lead to the Debtor's liquidation.

3. Liquidation would greatly prejudice the Debtor and its 49 employees and 3 freelancers (the "Employees"). Additionally, liquidation may limit, if not eliminate, recovery for unsecured creditors and numerous investors.

4. Moreover, and perhaps most important, the Movant is more than adequately protected. The Movant conveniently fails to adequately inform the Court that pursuant to the Agreement, the Movant received a confession of judgment ("Confession of Judgement") in

---

[1] All undefined terms have the meaning ascribed in the Movant's papers or will be defined below.

the amount of $7,000,000 (the "Judgment Amount". The Movant has executed on the Confession of Judgment in the amount of $3,500,000.00 and $4,500,000.00 is remaining. Therefore, the Movant is secured for approximately nine months of rent (even at its inflated rate of rent) that would extend to July.

5. Finally, the Movant exaggerates, at best, when it alleges that approximately $1,000,000 will relate to the Debtor's occupancy of the Premises during the post-petition period. The $491,666.67 monthly payment has two components(i) approximately $250,000.00 in rent and (ii) $241,888 to pay for the prior delinquency. Thus, the amount of rent that the Landlord should be entitled for post-petition rent for that period would be approximately $500,000.00 not $1,000,000.00.

## CASE BACKGROUND.

6. The Debtor filed its voluntary petition for relief under the provisions of 11 U.S.C. Chapter 11 on February 21, 2020 (the "Petition Date").

7. The Debtor continues to manage its property as a debtor and debtor-in-possession.

8. No trustee or examiner has been appointed in this case. Also, no official committee of unsecured creditors has been appointed.

9. The Debtor is a New York limited liability company in the business of owning and managing Gulliver's Gate, an exhibit space/attraction in the heart of Time Square. Gulliver's Gate is a technologically advanced, interactive and immersive world of miniatures covering 50,000 square feet.

10. The Debtor operates from its premises ("Premises") located at 216 W 44th Street, New York, New York which the Debtor leases from the Landlord.

11. The Petition was filed on an exigent basis to avoid eviction from the Premises.

12. The Debtor's management believes that, given the breathing spell provided by the filing of this case, the Debtor will be able to resolve the arrears which led to the threat of eviction though sale of the Debtor or investment in the Debtor and continue operations as a means of emerging from bankruptcy promptly.

### SIGNIFICANT STEPS TO REORGANIZE.

13. The Debtor's management is diligently working on obtaining financing to be able to remain in its current location or it will vacate the Premises for a lower cost option.

### THE AUTOMATIC STAY IS CRUCIAL TO DEBTOR'S ABILITY TO REORGANIZE.

14. In respect to the policy underlying the automatic stay, the Second Circuit explained:

> The automatic stay provisions promote two principal purposes of the Bankruptcy Code. First, the automatic stay provides the debtor with 'a breathing spell from his creditors. In addition, the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas. The Bankruptcy Code "provide[s] for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court, and [this policy] is effectuated by Sections 362 and 105 of the Code

*In re Ionosphere Cubs, Inc.,* 922 F.2d 984, 989 (2d. Cir.1990).

15. "A principal purpose of the automatic stay, particularly in the early stages of a

Chapter 11 case, is to permit a debtor to focus its energies on reorganizing and managing its business affairs without facing diversions and litigation brought on by its creditor constituencies." *In re Northwest Airlines Corp.* 2006 WL 382142, 1 (Bankr. S.D.N.Y., 2006) (citing *Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 157 F.3d 169, 172 (2d Cir.1998). The Debtor is at "a critical stage in their bankruptcy proceedings and are dealing with significant, time-sensitive issues that require the attention of management and counsel..." *Id.* at 2.

## THE DEBTOR'S POSSESSORY INTEREST HAS NOT BEEN TERMINATED.

16. The Stipulation of Settlement (the "Stipulation") is unquestionably one of the Debtor's most valuable assets. The Stipulation is an executory contract which could be assumed pursuant to § 365.

17. The Debtor's interest could be reinstated by the Debtor curing the Stipulation which is an executory contact under § 365. "Under these circumstances, where the Debtor is still in possession and can reinstate its rights under the Lease under applicable State law, the Lease is "unexpired" for purposes of § 365." *In re P.J. Clarke's Restaurant Corp.* 265 B.R. 392, 398-399 (Bankr. S.D.N.Y. 2001).

18. At a minimum, even if the Debtor is unable to assume the Lease, it requires time to move the exhibits to a new location.

19. "[T]he Second Circuit has recognized the principle that a debtor, whose legal rights have been terminated, nonetheless has an equitable interest based on bare possession

which is afforded the protections of the automatic stay." *In re P.J. Clarke's Restaurant Corp.* 265 B.R. 392, 399-400 (Bankr.S.D.N.Y. 2001). (citing *In re 48th Street Steakhouse,* 835 F.2d 427, 430 (2d Cir.1987).

## THE PREMISES IS PROPERTY NECESSARY TO REORGANIZE.

20. Contrary to the Movant's allegations, the Debtor can reinstate the Stipulation and, as such, it is "unexpired" for purposes of 11 U.S.C. §365.

21. "As recognized by the Supreme Court in *Timbers,* a debtor need not make as strong of a showing of likelihood of reorganization during the initial four months of the case as might be required later. During the early stages of bankruptcy a determination that reorganization is not feasible is not favored, and any uncertainties are resolved in favor of the debtor." *P.J. Clarke's,* 265 B.R. at 407.

22. In *P.J. Clarke's* the Court adopted a four-part test to determine whether the automatic stay should be vacated based on a landlord's allegation that "cause" exists because a debtor has failed to show that it can reorganize. Here, all the factors are present:

> (i)The case was only four months old [*here, the case has been pending for under 60 days*];
>
> (ii)the debtor need[s] more time to resolve the issues and determine whether it can or will assume or reject the lease [*here, the Debtor needs breathing space find funding or move*];

(iii) the lease [is] the debtor's primary asset[*here, the Premises is arguably Debtor's primary asset, certainly it may be forced to liquidate if it is summarily evicted*];

"(iv) the debtor [is] currently operating on the premises, and the lease appeared essential to a plan[*here, the Debtor is currently operating*].

*Id.(internal citations omitted).*

### ADEQUATE PROTECTION

23. As discussed, the Landlord is adequately protected by the Confession of Judgement.

24. The case law cited by Movant does not address where the Landlord is adequately protected. "The Landlord will also not be adequately protected if the Debtor falls behind in postpetition rent." In *re Sweet N Sour 7th Ave Corp.,* 431 B.R. 63, 69, (Bankr. S.D.N.Y. 2010).

25. In contrast, *In re Mad Lolo LLC* stands for the proposition that were the landlord can be protected by other means such as security deposit. See *In re Mad Lolo LLC,* 2009 WL 2902567 *12 (Bankr. S.D.N.Y. 2019). ("while Tirn Realty holds a substantial security deposit, the deposit is smaller than the amount of past due prepetition rent. Tirn Realty will not be adequately protected if the Debtor falls further behind on its post-petition rent obligations"). Here, the Landlord is more than adequately protected by the Confession of Judgement.

### *SONNAX FACTORS*

26. The Movant cites *In re Sonnax Industries, Inc.* 907 F.2d 1280, 1286 (2d Cir. 1990), the Movant fails to analyze the application of *Sonnax* to its Application. Moreover, an analysis *Sonnax* demonstrates that lifting the Automatic stay is not

warranted.

27. The 12 factors adopted by the Second Circuit (the "*Sonnax Factors*") are:

> (1) Whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.* 907 F.2d 1280, 1286 (2d. Cir.1990).

28. Factor 1: Whether relief would not result in complete resolution of the issue. As previously established: The Debtor can cure and assume the Lease pursuant to § 365 and, as a result, modifying the stay will not result in a complete resolution.

29. Factor 2: Continuing the State Court Action will interfere with Debtor's Chapter 11 case. As previously established: (i) the Bankruptcy Code entitles the Debtor to remain in the Premises (at a minimum the bare interest[2] which the Movant concedes to for the time to find another location) and (ii) the Premises are crucial to Debtor.

30. Factor 4: A specialized tribunal with the necessary expertise is not required in the instant matter. Furthermore, this Court, and not the State Court, has the expertise and jurisdiction to address § 365.

31. Factor 7: Allowing Movant to proceed with the Nonpayment Action will prejudice the legitimate interests of the Clients and creditors. Eviction of the Debtor, without offering the Debtor the ability to move the Exhibits, will almost certainly require the Debtor to liquidate.

32. Factor l0: Judicial economy would best be served by maintaining the stay. As discussed, this Court is in the best position to determine the respective rights of the parties pursuant to § 365.

33. Factor 12: Perhaps most importantly, the continuation of the stay does not prejudice the Movant because the Debtor has a legal right to remain in the Premises. Furthermore, Movant's interest in the premises is being adequately protected by the Confession of Judgment. In contrast, lifting the stay would cause extreme prejudice to the Debtor and its creditors.

### GOOD FAITH

34. "The critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy." *In re Loco Realty Corp.*, 2009 WL 2883050, at *3 (Bankr. S.D.N.Y.,2009). As demonstrated the Debtor intends to reorganize and there is a reasonable likelihood that the Debtor will emerge from bankruptcy.

35. The Landlord relies on re *Eclair Bakery Ltd* for the proposition that "where state court litigation is not pending or in the cards… the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay." *In re Eclair Bakery Ltd.*, 255 B.R. 121, 136

---

[2] *In re P.J. Clarke's Restaurant Corp.* 265 B.R. 392, 399-400 (Bankr.S.D.N.Y. 2001). (citing *In re*

(Bankr.S.D.N.Y.,2000).

36.  *Eclair* is clearly distinguishable. There, "after repeated opportunities to cure the default by making payment, the Debtor's predecessor Garden One repeatedly failed to do so… brok[e] one promise after another… the Debtor failed to make postpetition rent payments required under section 365(d)(3) of the Code and at this Court's express direction." *Id.* Moreover, *Éclair* found that the case was "(a) bad faith filing; and (b) a calculated effort to circumvent the earlier order of a federal bankruptcy judge." *Id.* at 140.

37.  Finally, if the Debtor cannot cure the Stipulation, the Debtor will not be able to assume the Stipulation pursuant to 11 U.S.C. § 365. Thus, the Debtor will not be able to extend or assume the Stipulation past February 21, 2020.

**WHEREFORE**, the Debtor respectfully requests that this Court deny the Landlord's Motion, and that the Court grant such other, further and different relief as may find just and proper.

Dated:    New York, New York
          December 10, 2019

Respectfully Submitted,
**LAW OFFICES OF GABRIEL DEL VIRGINIA**
*Proposed Attorneys for the Debtor
 and Debtor-in-Possession*

By: */s/Gabriel Del Virginia*
Gabriel Del Virginia
30 Wall Street, 12th Floor,
New York, New York 10005.
Telephone: 212-371-5478
Facsimile: 212-371-0460
*gabriel.delvirginia@verizon.net*

---

*48th Street Steakhouse,* 835 F.2d 427, 430 (2d Cir.1987).

## VERIFICATION

Under penalty of perjury, the undersigned hereby verifies and certifies he has read the annexed pleading, and that he believes the facts stated therein to be true, to the best of his knowledge and belief.

*GULLIVER'S GATE, LLC*
    *Debtor and Debtor-in-Possession*
    */s/ Michael Langer*
    *Member*